May it please the Court. On the merits, this case is about whether Mercy Health, a multi-billion dollar health care conglomerate, can maintain its defined benefit pension plan as a church plan exempt from ERISA, and if so, whether application of the church plan exemption to the Mercy plan violates the Establishment Clause of the United States Constitution. The Duster Court, sua sponte, dismissed the ERISA claims, holding that ERISA coverage is jurisdictional, and deciding, without the benefit of discovery, that a plan administrative committee of Mercy that met only six times in six years maintained the plan for purposes of the church plan exemption. The Duster Court then dismissed the Establishment Clause claims, holding that the plaintiff did not have Article III standing because they suffered no injury, even though the plan was underfunded by hundreds of millions of dollars and plan participants have not been denied all of ERISA's protections. The Court was wrong on both points. First, the District Court erred in dismissing the ERISA claims on jurisdictional grounds. In its seminal decision in Arbaugh, the Supreme Court established a bright-line test to determine whether coverage is jurisdictional, and instructed the lower courts to reexamine previous holdings that did not apply that test. The bright-line test is based on statutory language. If a statute's jurisdictional language does not refer to coverage, and the statute's coverage provisions do not speak in jurisdictional terms, or refer in any way to jurisdiction, then coverage is not jurisdictional. Application of this bright-line test establishes that ERISA coverage is not jurisdictional. ERISA's jurisdiction provision, found at 29 U.S.C. 1132e, states that, with the exception of benefit cases, the District Courts of the United States shall have exclusive jurisdiction of ERISA actions, and does not mention coverage. ERISA's coverage provisions... Counsel, doesn't it make sense that for ERISA to, for there to be jurisdiction in a federal court divining the meaning of ERISA with respect to a particular claim, that the policy in question actually be governed by ERISA? Yes, I believe it should be governed by ERISA. But with respect to coverage, you can determine coverage without ruling it under the basis of 12b-1. You can rule under 12b-6, you can have discovery, you can decide the issue, and often these issues of ERISA coverage are very complex, both legal and factual issues. And it more properly should be determined after the record is fully established. That is definitely what the Seventh Circuit recently said in a case, Smith v. OSF, where in that particular case, which was a church plan at issue, the district court had ruled on summary judgment before discovery was completed. And the Seventh Circuit said that with these complex factual and legal issues, which are still evolving, it would be more proper for the court to have a fully developed factual record in front of it in order to make these determinations. And it's sent back to the district court to complete discovery. So what kind of injury is necessary to provide standing? Injury with respect to Article III standing? Yes. Well, we would say that in this particular case, you look at three factors. One is the plan is underfunded by hundreds of millions of dollars because it doesn't have ERISA protections. There are no funding obligations for the plan. The Pension Benefit Guarantee Corporation does not insure the benefits of this plan. And participants, to be honest, don't have any of the notice provisions that would tell them how to plan for their future because they aren't required to give them if it's a church plan. This circuit has dealt with the funding issue in the context of ERISA-covered plans as to whether or not there is statutory standing. It did so in Foale v. U.S. Bank and Harley v. 3M. And in both of those cases, the plans were overfunded. And this court said that if a plan was overfunded, it didn't have the requisite injury or the participants did not have a statutory standing. That case is before the Supreme Court right now on both the issue of statutory standing and Article III standing. But those cases are very different because they have all of ERISA's protections. And even if the participant didn't have standing, the Secretary of Labor had standing to bring claims. Here, nobody has the right to bring a claim in federal court. And none of the protections are there that are with ERISA-covered plans. And that is why the participants have been injured in this case. So that deals with the Article III standing issue with respect to the Establishment Clause claims and also the arguments made by defendants that the plaintiffs don't have Article III standing with respect to the ERISA claims. Going back to the jurisdictional issue, the district court looked at the Eighth Circuit's case law, which basically says that coverage is jurisdictional under ERISA. It does. There's a pre-ARBA case. And then we have Schieffer and Chronister afterwards. And the question really is, you know, what to make of those two cases in light of their extant, if extant at all, analysis of the question. Well, I would say there's a couple of factors that are different about those cases, you know, aside from the fact that they never looked at the bright-line standard established by ARBA. I'd point out that Chronister was decided, I think, a month after ARBA was decided. And perhaps the issue wasn't brought before the court. But in both of those cases, the plaintiff brought the claims in state courts and the defendants removed the case to federal court. So it was a removal case. It wasn't a case in which the plaintiff actually brought the lawsuit claiming that ERISA covered the plan. And in each of those cases, then the question was whether you remand back to the district court because there was no ERISA plan there. That's basically the Fifth Circuit and Smith v. Transport Company has a footnote in that case in which they point out in that particular circuit, they had case law with that same factual situation where a case had been brought by the plaintiff in district court or state court, removed to federal court, and then the question was remand. And the court said that that's really a different factual circumstance than when the plaintiff brings the claim in federal court and seeks relief in federal court. There is a case involving Mercy Health currently pending in a district court in Missouri where the issue was whether their long-term disability plan is a church plan. And interestingly, Mercy Health argues in that case that it isn't a church plan because it isn't maintained by a principal purpose organization. It's maintained by Mercy Health. In that case, the court actually had discovery to determine whether or not the plan was a church plan. And so certainly, the courts could deal with the problem of giving plaintiffs and defendants a fair shake in a case where you have a removal and a remand question by having discovery and giving each party the right to develop the record. What questions really remain on discovery, Al? Well, there's quite a few questions. There was hardly any discovery. One of the main... How did the district court respond to that argument? The district court, for one thing, concluded that it didn't really matter whether the benefits committee never met or not because on paper, it administered the plan. And on discovery, you'd attempt to show that that was merely a charade to come in within the safe harbor of these provisions. Yes, I would say that discovery would reveal actually who... Assuming even that it administered is the same as maintained, and we do not think that administered is the same as maintained, but assuming administered is maintained, certainly you need to actually do the things that constitute administration. This is a multi-million dollar plan with tens of thousands of participants. Hard to believe that an administrative committee that only met six times in six years could really effectively administer this plan. That was the same issue as in OSF, Smith v. OSF, in the Seventh Circuit, where the committee had only met sporadically over a number of years for a short period of time. And the Seventh Circuit, in remanding the case back to the district court, said it cannot be that you can actually administer a plan when you meet so few times, and said that the record needed to be fully developed in terms of looking at emails, looking at the minutes of the meetings to determine if it was really this committee that was maintaining the plan or if it was OSF in that particular case. It could very well be that you have human relations departments in big corporations like this that run the plan. That's a normal thing that administer the plan, I would say. But that, of course, assumes that administration is maintained. And in the plaintiff's view, maintained has to be more than that. The entire ERISA statute is based on the idea that an employer is providing benefits for its employees, or a union is providing benefits to its members. It is the employer that has the ability to keep the plan going. It is the one who decides who's covered under the plan, what the benefits are, whether it wants to amend the plan, to terminate the plan. Those are plan-sponsored decisions. The Supreme Court has made that clear. And it has distinguished over and over again those plan-sponsored decisions from administrative decisions, which are fiduciary decisions. Fiduciaries of plans who administer plans administer them to make sure that the goals or the desires of the plan sponsor are accomplished. So they are supposed to administer the plan in accordance with the plan as written by the plan sponsor. But an administrative committee, I think as even defendants admit, they don't have the power to keep the plan going because they have no money to fund the plan and they can't terminate the plan. So it is, the administrative committee is purely doing administrative functions. Now the statute, if you say that... Where do we look to find the definitions for maintained? Well, unfortunately it isn't in ERISA. It is that the District Court and the Tenth Circuit in Medina used a black log dictionary and they cherry-picked one definition. But the Supreme Court has said when you're looking at ERISA terms, you should look at them in the context of the entire statute. And ERISA mentions plans being established and maintained by employers and by sponsors over and over again. It is a foundational issue. It seems that if you look at what happened in cases that were decided after Judge Perry had this case before, you look at the Seventh Circuit case, you look at Rawlins and you'd see that both trial courts and appellate courts have said, yeah, let's get the discovery done. Let's see what the plan looks like in operation so that we're not just deciding something on paper qualifies. And I assume that that's really where you're at at this point, that that's the relief that you want. That is correct. We would just ask... The opportunity to develop the record. Yes. To develop the record. And to decide these complicated issues in the context of a full record. Thank you, Mr. Handorf. Mr. Fink. May it please the Court. There are two primary issues on appeal. And those are, for purposes of Section 1002.33c, one, does the Benefits Committee, quote, maintain the plan? And two, is the Benefits Committee, quote, an organization that qualifies under the statute? It doesn't matter whether you consider these two issues under Rule 12b-1 or Rule 12b-6 because it's the same question. The plaintiffs concede that in the reply brief on page 6. They say the same factual and legal analysis to determine church plan status, it's the same question. Whether it's a merits question under 12b-6 or a jurisdictional question under 12b-1. And the reason this is so is because the meaning of maintain an organization in the statute, those are questions of law for the Court to determine. And once you apply the correct interpretation of those two words, the plaintiff's own allegations, their own admissions, and the plan document which they embrace in the complaint, confirm that the Benefits Committee maintains the plan for purposes of the statute and the Benefits Committee qualifies as an organization. For that reason, no matter which way you look at it and approach this under 12b-1 or 12b-6, this Court should affirm Judge Perry. The Benefits Committee maintains the plan because it administers, manages, and cares for the plan. Now, does that, your statement there, does that come from the documents establishing the plan? Where does that proposition come from that you just stated? That the committee administers, manages, and cares for the plan? Yes. It comes from the plaintiff's own admissions, Your Honor. If we look at their brief, the first brief they wrote to you. Well, their admission is that they are directed under the plan to administer, maintain the plan, but that the facts on the ground may or may not support that proposition. They're asserting essentially that there is a factual question here because one may infer from the fact that she said six times in six years. I thought the record was actually five times in six years, but I'd have to go back and look at it again. I don't recall, but whatever it is, it's no more frequent than once a year, all right? And that given the complexity of this plan, the millions of dollars involved in it, the thousands of employees involved, the claims that are processed, and that they're not capable of, this lay committee is not capable of having administered it. And they say there's at least that discovery question. Why are they wrong? Well, Your Honor, first of all, they never raised that issue before the district court. And if we look at their admissions, this is their brief to you. Page 16 of their first brief, quote, the plan is administered by the Mercy Health Benefits Committee. That's an admission to you. They said the exact same thing to Judge Perry. And when they opposed our motion to dismiss, they wrote, quote, the plan is administered by the Mercy Health Benefits Committee. We look at the complaint. This is their allegations. This isn't what we're saying. I didn't inject additional facts into the record. This is what plaintiffs say is the truth. You assume that their allegations are truthful. Paragraph 20, the Benefits Committee provides fiduciary oversight for Mercy's employee benefit programs and retirement plan, including for the Mercy plan. The Benefits Committee has all discretionary powers and authority necessary to carry out the provisions of the plan. And in paragraph 159, the Benefits Committee exercises discretionary authority or discretionary control respecting management of the Mercy plan. So I'm not making this up. I'm not bringing in affidavits outside the record or anything. I'm going based on what the plaintiffs alleged in their second amended complaint. They raised this issue about the meetings. Let's think about this. Any organization, such as the Benefits Committee, functions and operates outside of its formal meetings. If you have a company's board of directors, they're overseeing the company throughout the year, even though they may only meet once or twice or three times a year. You don't have to operate through a formal meeting. You meet in formal meetings, you delegate tasks and responsibility, but that doesn't mean you're still not overseeing the operations of a company. Or in this case, you're overseeing the operations and the management and the care of a pension plan. And that's exactly what the Benefits Committee is doing based on the plaintiff's own allegations. So, that's where we say that that's the evidence in the record that the Benefits Committee maintains the plan because it's administering, managing, and caring for the plan. The statute itself, section 1002.33c.1, indicates that maintain, in a sense for this unique situation where we have a principal purpose organization, means basically to administer the plan. It cannot mean all these additional things that plaintiffs say it must mean. They're trying to take the typical employee benefit plan, which has to be maintained by an employer or a labor union, and saying, well, you've got to do the same thing. Well, by definition, a principal purpose organization is not an employer and it's not a labor union. It can't be. If it is, then its principal purpose is not to administer a pension plan, which is what the statute says has to be its principal purpose. Can the record indicate this particular board or committee has any other managerial function, any other administrative function than responsibility for the plan? Its responsibility is to manage the employee benefit plans, the church plans of Mercy Health, Your Honor. Does it have any others? No, that's its sole function, is to manage the benefit plans. That's why it qualifies as the principal purpose organization for purposes of the statute. An advocate, the Supreme Court said, that is the main job of the principal purpose organization is to manage the plan. Obviously, it can't be an employer, it can't be a labor union. Therefore, to maintain the plan, really what it has to do is just manage and administer the plan. And that comports with the ordinary meaning.  And so, go ahead, Your Honor. I'm always behind you, so it takes me a while. My wheels spin slower sometimes. My question really is this, is that the principal purpose organization has to have the duty of running this plan. That's its job. If that's not its job, to run plans like this or this plan only, depending on what this principal purpose organization is, it's not qualifying, right? You don't get within the church exception, right? Because the church can't run it themselves, okay, or whatever, the institution. But what if, do you have to plead that the organization is actually maintaining the plan and running it, and the board is simply just a figurehead rubber stamp? Does that have to be pled in order for that question to be properly before the court? Do you follow what I'm saying? Probably not. No, I'm sorry, Your Honor, you don't. In this case... Well, in this case, what they're saying is this is a sham board. It could be a sham board, because they don't meet often enough, and there's so much work they couldn't possibly be getting it done in the meeting. And we have to do discovery, because we've got to go look at the emails in order to figure it out, right? Well, Your Honor, they never said that, though. If you read the complaints... That's actually my question. That's the argument that they've advanced, at least in their brief, at some point, right? Correct. Okay. But not before the district court, mind you. Yes, yes. Here, on appeal. That's at least been an advanced argument. So the question is, did it have to be pled to be viable, that theory, number one? And number two, not pled, did they waive it if they failed to raise it in front of Judge Perry? Yes, they did waive it, because they waived it when you take in conjunction with their other allegations, their affirmative allegations, that the plan is administered by the Benefits Committee, that the plan has exit discretion and control over the management of the plan. Once they raise those allegations, if they're not going to stick by them, then at the very least they had to come back and say, well, this is all a sham. They didn't do that, though. They never amended it, and failing to amend it to include the claim means it's not properly before us. Correct, Your Honor. Very good. So of what relevance to this case is the Seventh Circuit's decision in that? The Seventh Circuit? OSF case or whatever. Sure. I can tell you, in the Seventh Circuit's case, I mean, there are two aspects of the ruling. First of all, they said that to qualify as a principal purpose organization, you could be an internal Benefits Committee, which is directly in support of our position in this case. They also indicated that to maintain a plan, that Benefits Committee does not need to have all the functions of the plan sponsored, because they realize that's an impossibility. The reason they remanded the case is because in that case, unlike in our case, the plaintiffs claimed that the Benefits Committee really wasn't doing anything, wasn't administering the plan. Here, it's right in their brief, it's in their complaint. They conceded that the Benefits Committee administers the plan and manages the plan. Well, at least until they got to their brief. Well, until they got to their brief. Well, no. Even in their first brief, though. Right. In the reply. It was the reply brief. Right. Reply brief. Your Honor, that's a little bit too late at this point, in my view. Okay. So, basically, if we look at what the statute says, what advocates said, and the ordinary meaning, the definition of maintain is administer, manage, and care. And we've gone through how they've already admitted these things. Plaintiff's position that we also have to be the plan sponsor, we have to have liability for the benefits, we have to fund the plan benefits, we have to have the power to continue. Those are impossible obligations for any principal purpose organization. And if you were to construe the exception, the church plan exemption, to require those things out of the principal purpose organization, you're reading it right out of the statute. There is no principal purpose organization in this country that exists that could meet that. And the Tenth Circuit, in the Medina case, recognized that. And even now, I question where, they have yet to identify any possible organization that could meet the definition if maintain means what the plaintiff says it does. They keep referencing this thing called a pension board, which, basically, the Benefits Committee is the same as a pension board. That's what it does. A pension board administers and manages a pension plan. That's what the Benefits Committee does. That's what the plaintiff says it does. So in that case, that has to be the correct interpretation, that maintaining, in this unique circumstance, under 1002.33c, means to administer, manage, and care for the plan. It can't have the interpretation that the plaintiffs advocate. And then on the question of organization, once again, no definition of that. Plain language of the statute. I mean, if you take a definition, a dictionary definition, organization, it's a body of persons formed for a common and particular purpose with a specific and exclusive responsibility to further that purpose. That's exactly what the Benefits Committee is. It's a body of persons. It's a body of five people. It's formed for the purpose of administering, managing, and caring for the pension plan and the other church plans that Mercy offers. We clearly satisfy that definition. Instead of the Seventh Circuit in the Smith case, said, well, yeah, that's clearly, the Benefits Committee is clearly an organization in that case. So in conclusion, so we have two issues here. Does the Benefits Committee maintain the plan? And is it an organization? And I think based on the plaintiff's admissions, based on a proper interpretation of what maintain an organization is, they clearly are. Because of that, you should affirm the district court. Regardless of whether you do it under 12B1, it's a jurisdictional issue, or if it's a merits question, it really doesn't matter. What counts is, did the district court, did Judge Perry get it right? In the end, Judge Perry got it right, and you should affirm her. If you, Your Honor, have any other questions, I'll be happy to answer them. Otherwise, I'll conclude my time. Thank you, Mr. Fink. Ms. Handorff, your rebuttal. Your Honor, if you look at the complaint, it actually, it talks about the fact that the Administrative Committee does have the duty, the function of administering the plan. And part of the reason that's in the complaint is because there were allegations of fiduciary violations in the complaint, in terms of the failure of the Administrative Committee to do something to provide the notices, because ERISA says that you follow the plan document to the extent it's consistent with ERISA. And they had not been following the plan document to the extent it was consistent with ERISA. But if you look at the appendix to the court on page 54, it says that the Administrative Committee met six times between December 6, 2010, and June 2, 2016, with no meetings from 2010 to 2012. And in the district court, we argued that, in fact, you couldn't be administering a plan if, in fact, you never met. But the main issue in this case, on top of that, is not just whether they administered the plan, it's whether they maintained the plan. And if Congress had simply meant that all the committee had to do is administer the plan, it wouldn't have included maintain in the definition of the church plan, or the principal purpose organization. It would have simply said that all you have to do is have a committee that administers the plan, and that is not what the statute says. It says it has to maintain the plan. So you need to look at the definition of maintain in the context of the statute to determine whether or not simple administration is enough. But if you look carefully at the complaint and at the briefing below, it's clear the plaintiffs alleged throughout it that the committee was just a facade. Thank you. Thank you, Ms. Handorf. Thank you also, Mr. Fink. The court thanks both counsel for the argument you've provided to us today in addressing these issues and the briefing which you have submitted. We will take the case under advisement and render a decision in due course.